UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABONILICO CARROLL,<br><br>                Plaintiff,<br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS, et al,<br><br>                Defendants. | Case No.: 19cv2126-JO-KSC<br><br>**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>[Doc. No. 30] |

Plaintiff Abonilico Carroll is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. The operative complaint is plaintiff's Second Amended Complaint, which names as defendants the Warden ("Warden") and Chief Medical Officer ("CMO") of Richard J. Donovan state prison ("RJD") – where plaintiff was incarcerated at the time of the incidents giving rise to his lawsuit – and correctional officers S. Miller ("Miller") and C. Wright ("Wright"). *See* Doc. No. 30 (hereafter "SAC"). Because plaintiff is proceeding *in forma pauperis*, the SAC is subject to screening under 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, a cause of action that fails to state a claim can be dismissed *sua sponte* by the Court "at any

time." *Id.* The undersigned has conducted the required screening of plaintiff's SAC and, for the reasons stated herein, finds the SAC fails to state a claim against the Warden and the CMO. The Court therefore submits this Report and Recommendation for an order dismissing plaintiff's claims against these defendants, with prejudice and without leave to amend, to the Honorable Jinsook Ohta, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(d).

## I. BACKGROUND

### A. Procedural History

Plaintiff filed his original complaint on November 5, 2019, alleging that defendants Wright, Miller, the California Department of Corrections and Rehabilitation, RJD, and the "Medical Department" at RJD had violated his constitutional rights. *See generally* Doc. No. 1. As will be described more fully below, plaintiff's claims arise out of defendants' alleged failure to provide him accommodations on a lower floor, in a lower bunk, as he was recovering from major surgery in August 2017. *See generally id.* The original complaint survived initial screening as to plaintiff's Eighth Amendment claims against Wright and Miller, but the remaining defendants were dismissed. *See* Doc. No. 9.

Wright and Miller moved to dismiss plaintiff's original complaint. Doc. No. 16. While defendants' Motion to Dismiss was pending, plaintiff filed both a First Amended Complaint ("FAC")[1] and an opposition to the Motion to Dismiss. Doc. Nos. 20, 21. In the FAC, plaintiff added new claims against the Warden and the CMO. *See* Doc. No. 20. In this Court's Report and Recommendation ("R&R") regarding the Motion to Dismiss, dated September 29, 2020, the undersigned noted that an amended pleading would normally supersede the original pleading, thereby mooting any pending motion to dismiss. Doc. No. 23 at 4.[2] However, because plaintiff's FAC was subject to screening, the Court screened

---

[1] Plaintiff's FAC was erroneously labeled "Second Amendment to the Complaint." *See* Doc. No. 20.

[2] All page numbers cited herein refer to those generated by the Court's CM/ECF system.

the FAC and at the same time considered whether any of defendants' arguments in support of dismissing the original complaint would also apply to the FAC. *Id.*

This Court recommended that plaintiff's claims against the Warden be dismissed, as plaintiff failed to "identify a constitutional basis for plaintiff's claim against the Warden," and furthermore lacked "factual allegations to suggest how the Warden could have been aware of any objectively serious threat to plaintiff's safety and acted with deliberate indifference to an 'excessive risk' of harm to plaintiff." *Id.* at 9. The Court also recommended dismissal of plaintiff's claims against the CMO, as the FAC contained no allegations that the CMO "acted with deliberate indifference," nor could it be "inferred" from the FAC that the CMO "knew about but disregarded a risk that plaintiff would not be properly housed after surgery." *Id.* at 8.

Plaintiff informed the District Court on October 28, 2020, that he had no objection to the R&R. Doc. No. 28. On November 24, 2020, the District Court adopted the undersigned's R&R, and dismissed plaintiff's claims against the Warden and the CMO. Doc. No. 29 at 3-4. The District Court allowed plaintiff leave to amend his claims within 30 days. *Id.* at 4. Plaintiff filed his SAC on December 21, 2020.

**B. Plaintiff's Allegations**

As alleged in the SAC, after undergoing "major surgery," plaintiff was "advised by [his] doctors not to walk," as he would need "4-8 weeks to recover." SAC at 6. Plaintiff alleges that despite his doctors' recommendations that he use a wheelchair while he recovered, defendants housed him on the upper floor of RJD, "knowing that no canes[,] crutches[,] or wheelchairs were allowed on the upper tier … because of there being no ramps or elevators in the prison." *Id.* at 6-7. Plaintiff alleges that "all defendants knew [he] was in extreme pain" but failed to take appropriate measures to "ensure his safety and wellbeing." *Id.* at 9-10. Plaintiff alleges that instead of accommodating his need to use a wheelchair, Wright and Miller forced him to walk up a flight of stairs to his bunk. *Id.* at 6. Plaintiff alleges that while walking up the stairs in his state of "diminished strength," he fell down the stairs and hit his head, which caused him pain and "stiffness" in his head,

shoulder, neck and back. *Id.* at 10. Plaintiff further alleges that defendants' treatment of him and failure to protect him from harm caused him to feel "humiliate[ed]," "hopeless[,] shocked[,] and very depressed." *Id.* at 8. Plaintiff sues all defendants in their individual capacities, seeking compensatory and punitive damages. *Id.* at 13-16.

## II.  DISCUSSION

As noted, because Plaintiff is a prisoner and is proceeding *in forma pauperis*, his SAC requires screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's *in forma pauperis* complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Williams v. King*, 875 F.3d 500, 502 (9th Cir. 2017) (discussing 28 U.S.C. § 1915(e)(2)) (citation omitted); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). To survive screening, plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Likewise, "unadorned" accusations that the defendant "unlawfully[]harmed" the plaintiff fall short of this plausibility standard. *Id*. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

With the above standards in mind, and considering plaintiff's *pro se* status, the Court has carefully reviewed the allegations in the SAC, "'constru[ing] them liberally" and giving

plaintiff "'the benefit of any doubt.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (noting the Court's "'obligation'" to do so, "'particularly in civil rights cases'") (citations omitted). Nevertheless, for the reasons that follow, the Court finds that plaintiff has not stated a claim against either the Warden or the CMO.

**A. The SAC Fails to State a Claim for Deliberate Indifference Against the Warden**

Plaintiff alleges that the Warden "is the chief executive officer" of RJD and as such is responsible for both the conduct of his staff and the "safety, welfare and health care" of those in RJD's custody. SAC at 3-4. He also alleges that the Warden "had to know that there existed a great degree of risk for physical harm to plaintiff at the prison if plaintiff wasn't appropriately housed" after his surgery and that the Warden "fail[ed] to protect" plaintiff from this risk, in "thoughtless disregard" for plaintiff's medical needs. *Id.* at 4, 12.

The Court finds these allegations are insufficient to state a claim against the Warden. First, to the extent plaintiff seeks to hold the Warden liable for the actions or conduct of his subordinates, that claim must fail because there is no *respondeat superior* liability under 42 U.S.C. § 1983. *See Iqbal*, 556 U.S. at 676 ("vicarious liability is inapplicable to … § 1983 suits"). To state a § 1983 claim, "a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Id.*

To state a valid Eighth Amendment claim against the Warden, plaintiff must show that the Warden knew of and disregarded a substantial risk of harm to plaintiff's health or safety.[3] *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[D]eliberate indifference is a

---

[3] Plaintiff makes a fleeting reference to his "due process" rights under the Fourteenth Amendment. SAC at 6. However, "[w]here an amendment 'provides an explicit textual source of constitutional protection against a particular sort of government behavior,' it is that Amendment that 'must be the guide for analyzing the complaint.'" *Picray v. Sealock*, 138 F.3d 767, 770 (9th Cir. 1998) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)). Therefore, because Plaintiff was incarcerated at RJD at the time his claims arose, it is the Eighth Amendment's proscription on cruel and unusual punishments, and not "the more generalized notion of 'substantive due process,' [that] must be the guide for analyzing [his] claims" against the Warden and the CMO. *Albright*, 510 U.S. at 273 (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989).

stringent standard of fault, requiring proof that a [government] actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (noting that "[a] less stringent standard of fault" would lead to "*de facto*" vicarious liability) (citation omitted). The SAC must therefore include "sufficient factual matter" from which the Court can "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that the Warden was both "*subjectively aware*" of the risk to plaintiff's health and that he "'conscious[ly] disregard[ed]'" that risk. *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (emphasis in original) (citation omitted). "If [the Warden] should have been aware of the risk, but was not, then the [Warden] has not violated the Eighth Amendment, no matter how severe the risk." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)).

Plaintiff asserts that the Warden acted "knowingly and willingly," SAC at 6, but has not alleged any facts to support an inference that the Warden *actually knew* that housing plaintiff on the upper floor would create a serious risk to his safety. Because a complaint that states only "labels and conclusions" fails to state a claim, these allegations are insufficient. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 544); *see also Jones v. Cmty. Redev. Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) ("The plaintiff must 'allege with at least some degree of particularity overt acts which defendants engaged in' that support the plaintiff's claim.") (citation omitted). For the reasons discussed above, plaintiff's allegations that the Warden "had to know" of the risk to his safety, and that the Warden "knew" plaintiff was in "extreme pain" because he had just undergone major surgery (*see* SAC at 3, 9) sound in negligence and are not enough to state a plausible claim for deliberate indifference. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (noting that "an 'inadvertent [or negligent] failure to provide adequate medical care' alone does not state a claim under § 1983) (citation omitted) (alteration in original).

Plaintiff also fails to plead any facts, beyond the Warden's alleged "responsib[ility] for the over all [*sic*] operations" of RJD, demonstrating that the Warden had any personal

involvement in the decision regarding plaintiff's accommodations or care following surgery. Accordingly, the SAC also does not support the plausible inference that the Warden consciously disregarded a known risk to plaintiff's safety.[4]

For the foregoing reasons, the Court finds the allegations in the SAC do not adequately state a claim against the Warden for deliberate indifference under the Eighth Amendment. The Court therefore **RECOMMENDS** that plaintiff's Eighth Amendment claim against the Warden be **DISMISSED**.

**B. The SAC Fails to State a Claim for Deliberate Indifference Against the CMO**

Plaintiff alleges that the CMO is "legally responsible" for inmate "treatment, safety, welfare and health care." SAC at 4, 8, 13. He further alleges that the CMO "fail[ed] to act" by failing to "follow[] the notes from the hospital stating that plaintiff should not walk" after surgery. *Id.* at 8. Plaintiff states that when he was discharged from the hospital, the "hospital report" indicated he should use a wheelchair due to the nature of his surgery and the time needed for his recovery. *Id.* at 9, 11. Plaintiff alleges that "any competent physician holding [the CMO's] rank and authority" would have been aware of plaintiff's need to refrain from walking until he recovered, and that the CMO also knew about his needs "after receiving the hospital notes and reports." *Id.* at 9. Plaintiff contends that "if [he] had been evaluated correctly by CDCR guidelines[,] the CMO would have made sure that [he] was housed correctly," *id.* at 9, and that he "should have been housed in the infirmary from the

---

[4] Plaintiff also alleges that the Warden knew plaintiff was "in danger from the Warden[']s subordinates" and that after his fall, the Warden "failed" to appropriately "reprimand" the officers for their "blatant misconduct." SAC at 2, 4. However, the "danger" described throughout plaintiff's complaint is that he was housed in a bunk on the top floor (which required him to climb a flight of stairs, since it was not wheelchair accessible), not that he was accompanied there by Wright and Miller specifically. *See, e.g., id.* at 4, 6, 7, 9, 13. Regardless, even assuming the truth plaintiff's allegations against Wright and Miller, the Court finds that plaintiff has not pled any facts in the SAC to support an inference that the Warden was subjectively aware that these two correctional officers would disregard the recommendation that plaintiff be housed on the lower floor. Plaintiff also acknowledges that after he fell, he was "given a lower bunk lower tier chrono and housed appropriately." *Id.* at 8; *see also id.* at 10. Plaintiff believes disciplinary action should be taken against the officers, but his claim is for deliberate indifference to his medical needs. That his medical needs were, by his own admission, swiftly addressed after he was injured falling down the stairs negates any inference of the Warden's deliberate indifference after that point.

very first day back from the hospital." *Id*. at 10. Plaintiff alleges that the CMO "was the overseeing official" who "failed to heed" the advice of his surgeons and keep plaintiff "safe to recover." *Id.* at 11-12.

The Court finds that plaintiff's allegations fail to state a plausible claim that the CMO was deliberately indifferent to his health and safety in violation of the Eighth Amendment. Although plaintiff refers to a "Triage and Treatment" progress note from "health services" in which it was noted that plaintiff "ha[d] been advised not to walk and has been given a temporary wheelchair" (*see id.* at 7, 10) the progress note is not attached to any of his pleadings. Moreover, plaintiff does not allege that the CMO personally reviewed the progress notes or any of plaintiff's other hospital records or discharge instructions, or otherwise communicated with plaintiff's surgical care providers. Thus, the SAC does not plead facts to support a plausible inference that the CMO was subjectively aware of plaintiff's medical needs. As explained above, plaintiff's conclusory allegation that the CMO acted "knowingly" is not sufficient. *See Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (noting that "bare assertions" of liability "do nothing more than state a legal conclusion," and are not entitled to any weight in assessing whether a complaint adequately states a claim).

Plaintiff's allegations that the CMO should have known of the risk of housing him on the top floor, either due to the nature of his operation or because a "competent" physician would have recognized the risk, are likewise insufficient. These allegations sound in negligence and do not meet the much higher standard of subjective knowledge required for a claim of deliberate indifference. *See Toguchi*, 391 F.3d at 1057 ("Mere negligence … without more, does not violate a prisoner's Eighth Amendment rights.").

Plaintiff also fails to allege facts which demonstrate "a purposeful act or failure to respond to [his] pain or possible medical need," as is required to successfully plead a claim for deliberate indifference. *Jett*, 439 F.3d at 1096. Plaintiff has not alleged any facts indicating that the CMO was personally responsible for plaintiff's housing or post-surgical medical care, or that the CMO knew of but ignored the recommendation that plaintiff use

a wheelchair during his recovery. As discussed above, allegations that the CMO was the official "legally responsible" for the health care provided to inmates at RJD is insufficient, because "Section 1983 suits … do not support vicarious liability." *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).  Therefore, the SAC does not support a reasonable inference that the CMO took any action, or failed to act, in conscious disregard of a serious risk to plaintiff's health and safety.

For the foregoing reasons, the Court finds the allegations in the SAC do not adequately state a claim against the CMO for deliberate indifference under the Eighth Amendment. Accordingly, the Court **RECOMMENDS** that plaintiff's Eighth Amendment claim against the CMO be **DISMISSED**.

C. **Plaintiff's Claims Should Be Dismissed Without Leave to Amend**

Having recommended dismissal, the Court must also address whether plaintiff should be granted leave to amend his complaint again. The Court "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Walker v. Beard*, 789 F.3d 1125, 1139 (9th Cir. 2015) (citation omitted). Unless it is "absolutely clear that no amendment can cure the defect," a *pro se* litigant should be informed of the complaint's deficiencies and given an opportunity to amend. *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). "A district court, however, does not abuse its discretion in denying leave to amend where amendment would be futile." *Flowers v. First Haw. Bank*, 295 F.3d 966, 976 (9th Cir. 2002).

The Court observes that the SAC is plaintiff's third pleading, and his second attempt to state claims against the Warden and the CMO. His previous two complaints were each tested –by *sua sponte* screening, a Rule 12(b)(6) motion, or both – and found wanting. *See* Doc. Nos. 9, 23, 29.  This Court and the District Court have advised plaintiff what facts he must plead to state a valid claim for deliberate indifference. *See id.* Given plaintiff's multiple unsuccessful attempts to plead such a claim, the undersigned concludes that further amendment would be futile, and accordingly **RECOMMENDS** that the District Court dismiss plaintiff's claims against the Warden and the CMO without leave to amend.

## RECOMMENDATION and ORDER

The undersigned Magistrate Judge submits this Report and Recommendation to the Honorable Jinsook Ohta, United States District Judge, pursuant to pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(d). For the reasons stated above, **IT IS RECOMMENDED** that the District Court:

**DISMISS** *sua sponte* plaintiff's allegations against RJD's Chief Medical Officer under 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for failure to state a claim, with prejudice and without leave to amend, and

**DISMISS** *sua sponte* plaintiff's allegations against RJD's Warden under 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for failure to state a claim, with prejudice and without leave to amend.

**IT IS HEREBY ORDERED** that *no later than February 25, 2022*, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: January 24, 2022

Hon. Karen S. Crawford
United States Magistrate Judge