UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABONILICO LAMAR CARROLL, CDCR #BK-9830,<br><br>                             Plaintiff,<br>v.<br>CORRECTIONAL OFFICERS WRIGHT AND MILLER,<br><br>                            Defendants. | Case No.: 19cv2126-RBM (KSC)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND**<br><br>**(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 98, 112]** |

      Plaintiff Abonilico Lamar Carroll is a state prisoner proceeding *pro se* and *in forma pauperis* with a Second Amended Complaint pursuant to 42 U.S.C. § 1983. (ECF No. 30.) He claims that while housed at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, Defendants RJD Correctional Officers Wright and Miller were deliberately indifferent to his health and safety when they denied his request for a lower tier cell assignment after he returned from surgery unable to walk, resulting in an injury from a fall down a flight of stairs. (*Id*. at 6-12.) Currently pending are cross-motions for summary judgment. (ECF Nos. 98, 112.)

For the following reasons, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

## I. Procedural Background

Plaintiff initiated this action by filing a Complaint on November 5, 2019, naming as Defendants the California Department of Corrections and Rehabilitation ("CDCR"), the RJD Medical Department, the Warden of RJD, the RJD Chief Medical Officer, and RJD Correctional Officers Wright and Miller. (ECF No. 1.) On January 16, 2020, the Court granted Plaintiff leave to proceed *in forma pauperis* and dismissed all claims against all Defendants except Plaintiff's Eighth Amendment deliberate indifference claim against Defendants Wright and Miller. (ECF No. 9.) After Defendants Wright and Miller were served with the summons and Complaint, Plaintiff filed a First Amended Complaint naming Wright and Miller as Defendants along with the RJD Chief Medical Officer and the Warden of RJD. (ECF No. 20.)

Defendants' motion to dismiss the First Amended Complaint was granted in part and denied in part. (ECF No. 29.) Defendants RJD Chief Medical Officer and the Warden of RJD were dismissed and Plaintiff was granted leave to amend as to those Defendants. (*Id.* at 10.) Plaintiff filed a Second Amended Complaint, the operative pleading in this action, on December 21, 2020, naming the same four Defendants. (ECF No. 30.) Defendants Wright and Miller filed an Answer on March 29, 2021. (ECF No. 36.) On February 24, 2022, Plaintiff consented to the dismissal of Defendants RJD Chief Medical Officer and RJD Warden with prejudice. (ECF Nos. 104-05.)

Defendants Wright and Miller filed a motion for summary judgment on January 19, 2022. (ECF No. 98.) Plaintiff filed an Opposition on February 28, 2022 (ECF No. 106), to which Defendants filed a Reply on March 17, 2022. (ECF No. 108.) Plaintiff filed a cross-motion for summary judgment on April 6, 2022. (ECF No. 112.) Defendants filed an Opposition on April 22, 2022 (ECF No. 115), to which Plaintiff filed a Reply on May 20, 2022. (ECF No. 116.)

///

2

19cv2126-RBM (KSC)

## II.     Plaintiff's Allegations Against Defendants Wright and Miller

Plaintiff alleges that while incarcerated at RJD he underwent surgery at an outside hospital for urethroplasty which left him in wheelchair. (ECF No. 30 at 6.) "Plaintiff was advised by doctors not to walk, saying Plaintiff needed (4-8) weeks to recover." (*Id*.) Plaintiff alleges that on the day he returned to RJD he informed Defendants Wright and Miller he needed a lower tier cell because he could not walk upstairs to his cell, but they failed to "contact superiors or medical staff to correct this error." (*Id*. at 12.) He claims:

> Defendants Wright and Miller violated Plaintiff's [rights under the] Eighth and Fourteenth Amendment to the Constitution, when blatantly ignoring and disregarding Plaintiff's pleas for assistance to be accommodated appropriately, yet Defendants thought Plaintiff's demise, pain, the deprivation, cruelty and the risk to Plaintiff's health was a humorous and laughable situation, and knowing that no canes! crutches! or wheelchairs were allowed on the upper tier throughout the Department of Corrections, because of there being no ramps or elevators in the prison.

(*Id*. at 7.)

Plaintiff later fell down a flight of stairs, after which he was "given a lower bunk lower tier chrono and housed appropriately." (*Id*. at 8.) He hit the back of his head during the fall and lost consciousness, causing pain from his head to his legs, in his left shoulder, neck, lower back, "as well as the right side of the occiput, and bilateral neck stiffness." (*Id*. at 9-10.) He states he suffers from depression, anxiety and Post-Traumatic Stress Disorder, and claims the Defendants' actions amounted to more than mere negligent or reckless behavior but rose to the level of obduracy and wantonness. (*Id*. at 9.)

## III.    Cross-Motions for Summary Judgment

Defendants Wright and Miller seek summary judgment on three bases. First, they contend Plaintiff has failed to exhaust available administrative remedies because he failed to include the allegations in the Second Amended Complaint in an inmate grievance. (ECF No. 98 at 15-19.) Second, they argue that although it is disputed whether Plaintiff asked them to be housed in a lower tier cell, it is undisputed that (1) there was no substantial risk of serious harm to Plaintiff since he could have held on to a railing with one or both hands

1  and prevented his fall, (2) they did not have the authority to issue a medically-based
2  housing placement in a lower tier cell, and (3) even if they should have done as Plaintiff
3  requested and contacted their supervisors to arrange a housing change, Plaintiff did not
4  have the necessary medical accommodation chrono to be housed in a lower tier cell and
5  they had a reasonable justification to deny his request in the face of a minor risk of falling.
6  (*Id*. at 20-21.)  Finally, they argue they are entitled to qualified immunity because their
7  actions did not violate any clearly established right.  (*Id*. at 21-24.)

8  Plaintiff opposes summary judgment, arguing that: (1) he exhausted administrative
9  remedies by naming the Defendants in his inmate grievances, (2) it is a disputed question
10 of fact whether Defendants Wright and Miller had the authority to arrange for a lower tier
11 cell assignment because he had a medical chrono for his wheelchair, and (3) the threat to
12 his safety from using the stairs was obvious because Wright and Miller watched as he was
13 removed from his wheelchair and carried up to his cell by his cellmate two or three days
14 before his fall.  (ECF No. 106 at 1-7; ECF No. 106-1 at 20, 22.)  Defendants reply that
15 Plaintiff has not carried his burden of demonstrating there is a triable issue as to exhaustion
16 or on the merits of his claim.  (ECF No. 108 at 1-7.)

17 Plaintiff also moves for summary judgment, arguing that when he returned from the
18 hospital unable to walk he informed Defendants of his mobility impairment and asked "to
19 speak with a supervisor or medical to be able to straighten out this emergency situation,"
20 but Defendants did not let him speak to anyone, threatened him with disciplinary action if
21 he did not immediately return to his cell, and watched "inmates pick Plaintiff out of a
22 wheelchair and help the Plaintiff up a flight of" stairs.  (ECF No. 112 at 1-2.)  He claims
23 his fall down the stairs could have been avoided if Defendants would have responded to
24 his request for assistance in arranging a lower tier cell assignment, and argues that even if
25 they were not responsible for his cell assignment they were responsible for the safety of

inmates and were deliberately indifferent to an obvious risk to his safety.[1] (*Id.*)

Defendants oppose Plaintiff's summary judgment motion on the basis it does not establish the absence of a genuine issue of material fact and is not supported by admissible evidence. (ECF No. 115 at 3-6.) Plaintiff replies that Defendants have not contradicted his contention that they knew of a substantial risk to his safety from being housed in an upper tier cell and did nothing to prevent a foreseeable fall down the stairs two or three days later. (ECF No. 116 at 1-5; ECF No. 116-1 at 20, 22.)

### A.  Exhaustion of Administrative Remedies

Defendants first move for summary judgment with respect to exhaustion of administrative remedies. They argue that Plaintiff's inmate grievance RJD-HC-16055947 complaining he was not housed on a lower tier when he returned from surgery which caused him to fall down a flight of stairs did not name Defendants Wright or Miller or described any actions taken by them. (ECF No. 98 at 16-18.) Although Plaintiff named Wright and Miller at the final level appeal of the denial of that grievance, Defendants argue that the CDCR regulations in effect at the time provided that new information included in the appeal did not exhaust administrative remedies as to any issue not raised in the original grievance. (*Id.*) Plaintiff also filed inmate grievances RJD-16-03515 regarding a cane and a walker, inmate grievance RJD-16-03805 where he complained about falling and

---

[1] Because Plaintiff did not sign his summary judgment motion or his opposition to Defendants' summary judgment motion under penalty of perjury the Court is unable to consider any statements contained therein as evidence in opposition to summary judgment, other than the attached declarations which are signed under penalty of perjury. However, Plaintiff signed his Second Amended Complaint under penalty of perjury and to the extent the statements therein are within his personal knowledge they will be considered as evidence in opposition and support of the summary judgment motions. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) ("[B]ecause Jones is pro se, we must consider as evidence in his opposition to summary judgment all of Jones's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where Jones attested under penalty of perjury that the contents of the motions or pleadings are true and correct.")

requested a lower tier cell, and inmate grievance RJD-16-04559 regarding his fall. (*Id*. at 18-19.) None of those grievances mentioned Defendant Wright, and although Defendant Miller was mentioned in two of those grievances as witnessing the fall and failing to timely summon medical aid, Plaintiff did not pursue those grievances to the final level of appeal as required to exhaust administrative remedies. (*Id*.)

Plaintiff replies that Defendant Miller was named in his original inmate grievance, and that both Defendants "are generally referenced when I stated that the 'Administration refused' my request to be housed on a lower tier and lower bunk . . . or in the infir[m]ary." (ECF No. 106 at 2.) He attaches a copy of an inmate grievance submitted August 30, 2016, in which he states that: "My fall was witnessed by several people, including the building staff C/O Miller who delayed giving me aid until after he could refrain from laughing at my pain and suffering." (ECF No. 106-1 at 13.) Defendants reply that it is undisputed Plaintiff referred to Miller by name in two of his grievances, but he only claimed Miller witnessed the fall and delayed medical care, he did not state he requested Miller house him on the lower tier but Miller denied the request, as he claims here, and those grievances therefore did not place RJD on notice that Plaintiff was raising such a claim. (ECF No. 108 at 2.) They also argue that any "general reference" to Wright or Miller as "administration" is insufficient, and Plaintiff did not pursue the appeals which named Miller to the final level of review as necessary to exhaust. (*Id*. at 3.)

### 1. Legal Standards

A defendant is entitled to summary judgment if he or she shows "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of showing summary judgment is proper by "showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material

fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Court may not weigh evidence or make credibility determinations, and any justifiable inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Id*. at 255.

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. 632, 635 (2016), quoting 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "[P]roper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006). The exhaustion requirement is based on an important policy concern which "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

"[P]risoners are obligated to navigate all a prison's administrative review process 'regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible.'" *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005), quoting *Booth v. Churner*, 532 U.S. 731, 739 (2001). However, inmates are not required to exhaust administrative remedies when circumstances render administrative remedies effectively unavailable. *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010); *see also Ross*, 578 U.S. at 648

("The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'")  There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross*, 578 U.S. at 643.  They arise when: (1) the procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the process is "so opaque that it becomes, practically speaking, incapable of use;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44.

Once a defendant shows "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy . . . the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).  Any justifiable inferences drawn from the facts in the record are viewed in the light most favorable to Plaintiff. *Anderson*, 477 U.S. at 255.

When the grievance procedures took place in this case from August 30, 2016, to March 28, 2017, there were three formal levels of administrative review in the California Department of Corrections and Rehabilitation ("CDCR").[2]  *See* Cal. Code Regs., tit. 15 § 3084.5 (repealed eff. June 1, 2020).  An inmate began the process by submitting, within thirty days of the adverse action, a CDCR form 602-inmate appeal describing the adverse action challenged.  Cal. Code Regs., tit. 15 § 3084.8(b)(1) (repealed eff. June 1, 2020).  If

---

[2] "On March 25, 2020, and effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487." *Wimberly v. Cuevas*, No. 19cv8316-SI, 2021 WL 879881, at *4 n.1 (N.D. Cal. Mar. 9, 2021) (unpublished).  On September 1, 2017, after the third and final level of review was issued in the instant case, the CDCR adopted a separate grievance procedure for healthcare grievances.  *See* Cal. Code Regs., tit. 15 § 3999.225, *et seq*.

the inmate was not satisfied with the first level response, he or she could have submitted an appeal at the second level of review. *Id*. If the inmate was not satisfied with the second level response, he or she could have submitted an appeal to the Office of Appeals for a third level of review by the Chief of the Office of Appeals in Sacramento, which completed the exhaustion process. *Id*.

## 2. Evidence Presented in Support of Summary Judgment

Defendants present the declaration of H. Le, an RJD Correctional Counselor serving as the Office of Grievances ("OOG") Coordinator at RJD. (Le Decl. ¶ 1, ECF No. 98-4.) Le is responsible for reviewing inmate grievances which do not involve medical care or medical-related issues, coordinates the processing and maintenance of records of grievances at RJD, and is able to verify the status and history of an inmate's non-medical grievances. (*Id*. ¶ 3.) According to CDCR records, the only non-health care grievances Plaintiff filed from August 23, 2016, to November 5, 2019, include RJD-16-03515, RJD-16-03805 and RJD-16-04559, which are attached to the Le declaration as Exhibits 2-4. (*Id*. ¶¶ 6-9; ECF No. 98-4 at 7-29.)

In RJD-16-03515 Plaintiff requested a walker and cane and was provided those items. (Le Decl. Ex. 2, ECF No. 98-4 at 8-12; Defendants' Statement of Undisputed Facts at 15, ECF No 98-1 at 4.) In RJD-16-03805 Plaintiff complained of falling down the stairs after requesting to be housed in a lower tier cell; he did not mention Defendant Wright but contended Defendant Miller witnessed the fall and delayed summoning medical attention. (Le Decl. Ex. 3, ECF No. 98-4 at 14-18; Defendants' Statement of Undisputed Facts at 16, ECF No. 98-1 at 4.) That grievance was cancelled at the first level of review on the basis that his housing status request had been resolved, and Plaintiff was instructed that it could not be resubmitted but he could appeal its cancellation. (Le Decl. Ex. 3, ECF No. 98-4 at 14; Defendants' Statement of Undisputed Facts at 17, ECF No. 98-1 at 4.) Rather than appeal the rejection of RJD-16-03805 as instructed, Plaintiff filed RJD-16-04559, in which he attached RJD-16-03805 and claimed he should not have been climbing stairs due to his surgery and wanted "to exhaust administrative remedies so I can find the right counsel to

correct this wrong so this will never happen to an inmate ever again!!" (Le Decl. Ex. 4, ECF No. 98-4 at 21.) RJD-16-04559 was screened out at the first level because it was "not an appeal," and Plaintiff was advised "that he should take the corrective action necessary and resubmit the appeal." (*Id.* at 20; Defendants' Statement of Undisputed Facts at 17, ECF No. 98-1 at 4.) He did not file an appeal or take corrective action. (Le Decl. ¶ 6.)

Defendants present the declaration of Howard E. Mosely, the Associate Director of the Office of Appeals ("OOA") for the CDCR who administers the CDCR grievance and appeal process. (Mosely Decl. ¶ 1, ECF No. 98-6.) A search of CDCR records indicates that only one non-healthcare appeal was received by the OOA from Plaintiff between August 23, 2016, and November 5, 2019. (*Id.* ¶ 8.) It was received on August 23, 2016, was assigned Appeal Log No. 1602656, and it appealed the denial of the underlying inmate grievance RJD-16-01774, which had been received by the OOA on September 6, 2016, and which involved a disciplinary action. (*Id.*) A copy of the appeal and the OOA decision are attached to the Mosely declaration as Exhibit 3. (ECF No. 117 at 6-69.) Thus, Defendants have presented evidence that Plaintiff did not include in any of his three non-healthcare grievances the allegations in the Second Amended Complaint against Wright or Miller and did not appeal any of those grievances to the final level of review.

Finally, Defendants present the declaration of I.R. Hart, the Chief of the Health Care Correspondence and Appeals Branch ("HCCAB") of the Policy and Risk Division of the California Correctional Health Care Services ("CCHCS"). (Hart Decl. ¶ 1, ECF No. 98-5.) Hart states that the HCCAB is the part of the CCHCS which provides oversight of medical, dental and mental health care appeals and grievances for the CDCR, and that he is able to verify the status and history of a CDCR inmate's healthcare grievances or appeals. (*Id.* ¶¶ 1, 5.) According to CDCR records, the only healthcare grievances Plaintiff filed from August 23, 2016, to November 5, 2019, include RJD-HC-16055947 and RJD-SC-16001685. (*Id.* ¶ 8.) Staff complaint grievance RJD-SC-16001685 was determined not to meet the criteria for assignment as a staff complaint since no misconduct was identified, and it was therefore closed and re-opened as healthcare grievance RJD-HC-16055947. (*Id.*

¶ 9.) Copies of those grievances are attached to the Hart declaration as Exhibit 2. (ECF No. 98-5 at 9-23.)

Plaintiff claimed in RJD-HC-16055947 that he was injured when fell down a flight of stairs as a result of the medical department's refusal to house him in the infirmary or give him a lower tier chrono upon his return from the hospital, and that he received further injuries as a result of the medical department taking away his wheelchair and not issuing him a cane, characterizing those actions as "negligent, unprofessional, malpractice and racist acts of deliberate indifference." (ECF No. 98-5 at 16.) The grievance was granted in part and denied in part at the first level of review which identified the scope of Plaintiff's grievance as "Want[ing] RJD to be held responsible for damages caused to him due to negligent medical care." (*Id*. at 18-19.) When he appealed at the second level of review, he again did not refer to Wright or Miller but stated he "was not satisfied because after being released from the hospital RJD medical should have had my housing secured before I returned to the prison or this incident would never have happened," and was dissatisfied with the medical care he was receiving after his fall. (*Id*. at 15.) The appeal at that level was granted in part and denied in part on a nearly identical basis as the first level appeal. (*Id*. at 20-21.) When Plaintiff appealed RJD-HC-16055947 at the third and final Director's level of review he stated: "I'm dissatisfied because I informed c/o Miller [and] c/o Wright and several other c/os that I should not be up on no top tier when I just had a surgery and I couldn't get up the stairs, was helped by an inmate, I wouldn't have fallen down the stairs if medical would have done [their] job by housing me right, but I was threatened and forced in a top tier cell by c/o Miller and I complied!" (*Id*. at 13.) The March 28, 2017, headquarters' level denial stated that Plaintiff's administrative remedies were exhausted, and acknowledged he requested that the CDCR, the Warden of RJD, and the "administration, and medical staff, be held fully responsible for any and all damages caused to you as a result of negligence, unprofessional malpractice, and racist acts of deliberate indifference." (*Id*. at 10.) The denial concluded: "After review, no intervention at the Director's Level of Review is necessary as your medical condition has been evaluated and

you are receiving treatment deemed medically necessary." (*Id*. at 11.)

### 3. Analysis

Defendants have presented evidence in support of summary judgment that Plaintiff's grievance RJD-16-03805 complaining that his fall down the stairs was due to a failure to accommodate his request to house him on a lower tier named Miller as a witness to the fall who failed to timely summon medical aid but did not name Wright at all, did not include the allegations in the Second Amended Complaint that Wright and Miller denied his request for a lower tier cell assignment, was the only grievance which named either Defendant by name, and did not advance past the first level of review. They have also come forward with evidence that Plaintiff's allegations in the Second Amended Complaint that his fall was a result of Wright and Miller having denied his request to be housed in a lower tier cell was not presented in any original grievance but was presented for the first and only time at the final level of appeal of RJD-HC-16055947. They correctly point out that the addition of the new allegations against Wright and Miller at the final level of review of RJD-HC-16055947, which were not included in the original grievance or the lower levels of review, is insufficient to exhaust administrative remedies as to those allegations. (ECF No. 98 at 18, citing Cal. Code Regs., tit. 15 § 3084.1(b) (repealed eff. June 1, 2020).) Although California regulations currently in effect provide that addressing Plaintiff's newly added allegations against Wright and Miller at the final headquarters' level of review exhausts administrative remedies as to the new allegations, *see* Cal. Code Regs., tit. 15 § 3999.230(j) (2019) ("A headquarters' level disposition addressing new issues exhausts administrative remedies."), at the time of the March 28, 2017, headquarters' level denial Plaintiff's failure to include them in the original grievance resulted in a failure to exhaust. *See* Cal. Code Regs., tit. 15 § 3084.1(b) ("Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included" in the originally submitted inmate grievance) (repealed eff. June 1, 2020).) CDCR regulations at the time also required an inmate to include the names of the staff members and describe their involvement. *See* Cal. Code Regs., tit. 15 § 3084.2(a)(3)

(an inmate must "list all staff member(s) involved and shall describe their involvement in the issue" in the administrative grievance) (repealed eff. June 1, 2020)).

Accordingly, Defendants have carried their burden on summary judgment of coming forward with evidence showing there is no genuine issue of material fact in dispute that Plaintiff failed to exhaust administrative remedies with respect to the only remaining claim in the Second Amended Complaint, alleging Wright and Miller were deliberately indifferent to his health and safety by threatening him with disciplinary action if he refused to climb the stairs to his cell rather than acquiesce to Plaintiff's request they ask their supervisors if he could instead be housed in a lower tier cell. *See* Fed.R.Civ.P. 56(c) (a party is entitled to summary judgment when they show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."); *Rhodes*, 621 F.3d at 1004 ("[T]he PLRA's exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims.")

The burden has shifted to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Any justifiable inferences drawn from the facts in the record are viewed in the light most favorable to Plaintiff. *Anderson*, 477 U.S. at 255. Plaintiff argues that Defendant Miller was named in his original inmate grievance, and that both Defendants "are generally referenced when I stated that the 'Administration refused' my request to be housed on a lower tier and lower bunk or in the infirmary." (ECF No. 106 at 2.) He attaches a copy of his inmate grievance RJD-16-03805 submitted August 30, 2016, in which he states that: "My fall was witnessed by several people, including the building staff C/O Miller who delayed giving me aid until after he could refrain from laughing at my pain and suffering." (ECF No. 106-1 at 13.) As set forth above, that grievance was cancelled at the first level of review on the basis the underlying issue had been previously resolved and Plaintiff was instructed it could not be resubmitted but he could appeal its cancellation. (Le Decl. Ex. 3, ECF No. 98-4 at 14; Defendants' Statement of Undisputed Facts at 17, ECF No. 98-1 at

4.) Rather than appeal the rejection of RJD-16-03805 as instructed, Plaintiff filed RJD-16-04559, in which he referenced and attached a copy of RJD-16-03805 and claimed he should not have been climbing stairs due to his surgery and wanted "to exhaust administrative remedies so I can find the right counsel to correct this wrong so this will never happen to an inmate ever again!!" (Le Decl. Ex. 4, ECF No. 98-4 at 21.) RJD-16-04559 was screened out at the first level of review because it was "not an appeal," and Plaintiff was advised "that he should take the corrective action necessary and resubmit the appeal." (*Id*. at 20; Defendants' Statement of Undisputed Facts at 17, ECF No. 98-1 at 4.) Plaintiff did not file such an appeal or take corrective action. (Le Decl. ¶ 6.) Thus, even if that grievance was improperly screened out, his failure to appeal constitutes a failure to exhaust with respect to his contention that Miller witnessed the fall and did not summon medical aid. *See Cortinas v. Portillo*, 754 F.Appx. 525, 527 (9th Cir. 2018) (an improper cancellation does not exhaust available administrative remedies where prisoner could have but failed to file an appeal of the cancellation). Even if Plaintiff could show he was somehow thwarted from advancing that grievance to the final level as necessary to exhaust, it accused Miller of witnessing the fall and failing to summon help but did not include the allegations in the Second Amended Complaint that his fall was caused by the failure of Wright and Miller to accommodate his need for a lower tier cell two or three days earlier.

      Plaintiff also contends Wright and Miller "are generally referenced when I stated that the 'Administration refused' my request to be housed on a lower tier and lower bunk or in the infirmary" in RJD-HC-16055947. (ECF No. 106 at 2.) The March 28, 2017, headquarters' level decision which denied the appeal of that grievance acknowledged that Plaintiff requested that the CDCR, the Warden of RJD, and the "administration, and medical staff, be held fully responsible for any and all damages caused to you as a result of negligence, unprofessional malpractice, and racist acts of deliberate indifference." (*Id*. at 10.) Even assuming the prison was placed on notice that Plaintiff was raising a claim of deliberate indifference to his safety against unnamed RJD officials by not housing him in a lower tier cell, there are no allegations in the RJD-HC-16055947 grievance that Plaintiff

asked either Wright or Miller for such a housing assignment, as that allegation was only included at the final level of review. It was only at the final level of review of the RJD-HC-16055947 grievance that Plaintiff finally included Wright and Miller as among the theretofore unnamed "administration" members he blamed for the failure to secure an upper tier cell assignment, having alleged in the original grievance and at the first two levels of review that it was the failure of the RJD medical department and unnamed members of the administration to ensure he had a lower tier cell assignment upon his return from the hospital which caused his fall. Plaintiff clearly had the opportunity in all of his original grievances and at the lower levels of review of his healthcare grievance to argue that his fall could have been prevented if Wright and Miller would have acquiesced to his request to ask their supervisors if he could be housed on a lower tier. Instead, he chose to seek to hold the RJD medical department and unnamed members of the administration responsible for not ensuring he had a lower tier medical chrono in place upon his return from the hospital in a wheelchair. Under CDCR regulations in effect at the time, his failure to explicitly name Wright and Miller until the final level of review constitutes a failure to properly exhaust administrative remedies. *See Woodford*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."); *see* Cal. Code Regs., tit. 15 § 3084.2(a)(3) (an inmate must "list all staff member(s) involved and shall describe their involvement in the issue" in the administrative grievance) (repealed eff. June 1, 2020)); *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (holding that a prison's grievance procedure determines the level of detail required to exhaust), citing *Jones*, 549 U.S. at 219 (declining to adopt a bright line rule that exhaustion is inadequate simply for failure to name an individual in a grievance and finding that because the Michigan Department of Corrections' procedures contained no such requirement it was not a prerequisite to proper exhaustion); Cal. Code Regs., tit. 15 § 3084.1(b) ("Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the

appellant that was not included" in the originally submitted inmate grievance) (repealed eff. June 1, 2020).).

The reason no administrative record was made regarding the allegations in the Second Amended Complaint that Wright and Miller were deliberately indifferent to Plaintiff's safety by refusing his request to ask their supervisors if he could be assigned a lower tier cell, (as opposed to the administrative record which was made that Plaintiff contended it was the failure of the RJD administration to have a lower tier cell assignment in place when he returned from the hospital in a wheelchair which amounted to deliberate indifference to his safety), is Plaintiff's choice to withhold Defendants' names and his allegation that they refused his request to arrange a lower tier cell until the final level of review of his healthcare grievance, which under CDCR regulations in effect at the time preclude proper exhaustion. *See Woodford*, 548 U.S. at 94-95 ("[P]roper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved."); *Jones*, 549 U.S. at 204 (the exhaustion requirement is based on an important policy concern which "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record."); *Rhodes*, 621 F.3d at 1004 ("[T]he PLRA's exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims.")

Plaintiff has failed "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172; *see also Ross*, 578 U.S. at 643-44 (listing "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief," including when: (1) the

procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the process is "so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.") Rather, the evidence in the record shows a lack of a genuine dispute regarding Plaintiff's failure to exhaust available administrative remedies with respect to his Eighth Amendment deliberate indifference claim against Defendants Wright and Miller.

The Court concludes Defendants Wright and Miller are entitled to summary judgment because the "undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust" administrative remedies as to the only claim remaining in this action, Plaintiff's Eighth Amendment claim against Wright and Miller for deliberate indifference arising from their response to his request for a lower tier cell assignment, and because Plaintiff has failed to satisfy his burden of showing administrative remedies were "unavailable" to him. *See* Fed. R. Civ. P. 56; *see also Albino*, 747 F.3d at 1166.

The motion for summary judgment filed by Defendants Wright and Miller based on Plaintiff's failure to exhaust available administrative remedies is **GRANTED**.

### B.     Remaining Contentions

Both parties seek summary judgment on the merits of Plaintiff's Eighth Amendment claim that Defendants Wright and Miller were deliberately indifferent to his need for a lower tier housing assignment. They both argue there is no triable issue of fact in dispute that: (1) there was a substantial risk of injury by refusing a wheelchair-bound inmate's request for a lower tier cell assignment, (2) Defendants responded reasonably to Plaintiff's request to check with their supervisors to see if he could be assigned a lower tier cell when they (a) threatened him with disciplinary action if he refused to exit his wheelchair and climb the stairs to his cell, and (b) whether it would have been pointless to do so because he did not have the necessary medical chrono for a lower tier cell assignment, and (3) Defendants' failure to act that day caused his fall two or three days later. *See Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976) (holding that a prisoner may show he was subjected to cruel and unusual punishment in violation of the Eighth Amendment when prison officials are "deliberately indifferent" to a substantial risk of injury); *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."); *id*. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably."); *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (a plaintiff must prove an affirmative link between an injury and a defendant's conduct).

The Court need not determine whether either party has established the lack of a triable issue of material fact on the merits of Plaintiff's claim because entry of summary judgment is appropriate on exhaustion. Likewise, because Defendants are entitled to summary judgment due to Plaintiff's failure to exhaust available administrative remedies, the Court declines to address qualified immunity.

Accordingly, Plaintiff's motion for summary judgment is **DENIED** and the Court does not reach the remaining arguments in Defendants' summary judgment motion.

## IV. Conclusion and Order

Based on the foregoing, **IT IS ORDERED** that:

1. Plaintiff's motion for summary judgment [ECF No. 112] is **DENIED**.

2. The motion for summary judgment filed by Defendants Wright and Miller [ECF No. 98] is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of Defendants Wright and Miller and close the case.

**IT IS SO ORDERED.**

Dated: July 14, 2022

Hon. Ruth Bermudez Montenegro
United States District Judge